**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

CAROLINA SECURITY AND FIRE
INCORPORATED; CLIFTON REYNOLDS;
DOTTIE REYNOLDS; HVAC
CONSTRUCTION COMPANY,
INCORPORATED; FRED L. HATFIELD;
DOROTHY HATFIELD,
Plaintiffs-Appellants,

No. 97-1528

v.

CONTROL SYSTEMS INTERNATIONAL,
INCORPORATED, a Delaware
corporation,
Defendant-Appellee,

UNITED STATES OF AMERICA,
Movant.

Appeal from the United States District Court
for the District of South Carolina, at Columbia.
Patrick Michael Duffy, District Judge.
(CA-95-1577-3-23)

Argued: April 10, 1998

Decided: July 21, 1998

Before MOTZ, Circuit Judge,
STAMP, Chief United States District Judge for the
Northern District of West Virginia, sitting by designation,
and DOUMAR, Senior United States District Judge for the
Eastern District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

**COUNSEL**

**ARGUED:** James Edward Bell, III, BELL & MOORE, P.A., Sumter, South Carolina, for Appellants. David G. Surratt, CANTERBURY, STUBER, ELDER, GOOCH, & SURRATT, P.C., Dallas, Texas, for Appellee. **ON BRIEF:** Jeffrey A. Brannen, CANTERBURY, STUBER, ELDER, GOOCH & SURRATT, P.C., Dallas, Texas; Kimila L. Wooten, OGLETREE, DEAKINS, NASH, SMOAK & STEWART, L.L.P., Greenville, South Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Carolina Security and Fire, Inc. <u>et al.</u> ("plaintiffs") appeals an order of the district court granting summary judgment to Control Systems International, Inc. ("CSI") on plaintiffs' claims for breach of contract, fraud, negligent misrepresentation, tortious interference with contract, and federal and state antitrust violations. We affirm based on the reasoning of the district court.

I.

CSI is a small Texas based manufacturer of energy controls equipment for heating and air conditioning units used in industrial buildings. CSI has a dual distribution system: 1) CSI will sell directly to customers or 2) CSI will sell to "authorized" value added resellers ("VARs") who have been trained at CSI headquarters and have an ongoing contract with CSI involving sales quotas and non-exclusive territories. HVAC Construction Company, Inc. ("HVAC") and Carolina Security and Fire, Inc. ("Carolina Security") are mechanical and security contractors, respectively, based in South Carolina.

On or about September 30, 1991, HVAC bid on two contracts to update heating and air conditioning systems at four buildings at Fort Jackson, South Carolina. The contracts with the U.S. government specified that CSI equipment was to be used on the jobs and that the contractor be an authorized CSI installer of the equipment. After submitting bids along with other contractors, HVAC was awarded the two contracts for all four buildings.

HVAC did not use the authorized CSI subcontractor, Larry Bironas, in its successful bid. Instead, HVAC used Larry Cantrell of Electromatic, Inc. ("Electromatic"), who had installed similar systems in the past at a lower price than Bironas, although it appears that none of these systems were CSI systems. In order to use Cantrell on the job, the government required CSI authorization of Cantrell.

On June 5, 1992, CSI account representative Kirk Northington sent a letter to Cantrell to submit to Fort Jackson's contracting officer Gloria Brown. The letter stated:

> This letter is in confirmation of your Purchase Order . . . for the HVAC project at Charleston Air Force Base, Building 215. As per our previous understanding, we will provide the necessary CSI System 7000 components and some engineering support where needed. We are in understanding that Electromatic will perform all control system installation. In our opinion Electromatic is qualified to perform CSI System 7000 installation.

This letter was then forwarded to Jan Whittemore, the Contracting Administrator at Fort Jackson.

The plaintiffs contend that although the letter refers to the Charleston Air Force Base, Northington knew that there was no such project and that the equipment was to be used at Ft. Jackson pursuant to an alleged oral contract between Cantrell and Northington.

According to CSI, Electromatic took possession of the system 7000 without paying for it, and then proceeded to divert delivery from Charleston to Fort Jackson. The plaintiffs admit to this diversion, but

3

state that Northington would only sell the system this way because he wanted to protect his sales commission. CSI claims that even if there was an oral contract between Cantrell and Northington, this agreement constituted a scheme to ship the product to Fort Jackson by invoice through Charleston so as to avoid CSI's policy of a branch office not competing with VARs. Therefore, Northington was acting outside the scope of his employment and the alleged oral contract was not attributable to CSI.

When Hatfield was asked by Ft. Jackson officials about the reference to Charleston AFB, Hatfield replied that the letter applied to Ft. Jackson, and this explanation was initially accepted. Subsequently, CSI delivered the equipment to Cantrell who began the installation process at Ft. Jackson.

After discovering that HVAC had obtained the CSI installation contracts for Fort Jackson, Bironas asked Ft. Jackson personnel about Electromatic's CSI authorization. Whittemore then contacted CSI to determine if Electromatic was an authorized VAR.

Northington explained that Electromatic was not an authorized VAR. An authorized VAR must have CSI approval to do the engineering, start-up, and programming, as well as the installation itself on any project in addition to signing a contract with CSI obligating the VAR to send people to train in Dallas, Texas. Mike Busby, VAR Operations Manager, was later contacted by Brown. He explained to her that the letter CSI had sent to Electromatic only "qualified" Electromatic to install the system for one particular project with the assistance of CSI and it did not make Electromatic an "authorized" installer of the CSI system. Plaintiffs argue that this letter did not accurately respond to Brown's inquiry as to whether they were authorized to install CSI systems because the letter provided more information than solicited.

Ultimately, HVAC was defaulted from the projects at Fort Jackson. The basis for the default was failure to prosecute the work, failure to pay contractors and suppliers, and failure to have an "authorized" CSI subcontractor. Because HVAC could not bid on any further government work due to lack of bonding capacity, CSI contends that HVAC got Carolina Security to bid on an additional project at Fort Jackson.

4

Carolina Security claims that it used HVAC and Cantrell as subcontractors because it knew that Cantrell had been authorized to install CSI systems. Carolina Security was apparently terminated when the government realized that Hatfield was utilizing Carolina Security to bid contracts at Ft. Jackson.*

The plaintiffs brought suit against CSI alleging breach of contract, tortious interference with a contract, breach of contract accompanied by a fraudulent act, civil conspiracy, and violations of the Unfair Trade Practices Act ("UTPA") and the Sherman Antitrust Act under 15 U.S.C. § 1, together with various causes of action related to the individual plaintiffs having to make payments under their indemnity agreements.

Thereafter, CSI moved to dismiss pursuant to Fed. R. Civ. P. 12(b) or, in the alternative, for summary judgment. The district court granted summary judgment on all claims. The district court entered a final order and the plaintiffs appealed therefrom.

II.

"Appellate review of a summary judgment requires an examination of the record before the district court to determine de novo that there is no genuine issue of material fact . . . ." Sempione v. Provident Bank of Maryland, 75 F.3d 951, 954 (4th Cir. 1996)."The standard of appellate review for the granting or denial of a summary judgment motion is de novo. Thus, the court of appeals uses the same standard as the district court." Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994).

Rule 56(c) of the Federal Rules of Civil Procedure mandates the granting of summary judgment when the evidence, viewed most favorable to the nonmoving party, demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judg-

_____

*Debarment proceedings were instituted against both HVAC and Carolina Security. Carolina Security contends that this was part of the "scheme" to eliminate these companies from the Fort Jackson projects at any cost. However, HVAC and Carolina Security did settle with the government and agree to a three-year debarment.

ment as a matter of law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986). A party opposing a properly supported motion for summary judgment may not rest on the mere allegations or denials of his pleadings, but must set forth, by affidavit or other proof, specific facts showing that there is a genuine issue of material fact. <u>Id.</u> The existence of a mere scintilla of evidence in support of the nonmoving party's position is not sufficient to overcome a motion for summary judgment. A party's response to the motion must set forth specific facts, admissible in evidence, showing that there is a genuine issue for trial. If he does not so respond, summary judgment should be entered against him. <u>Id.</u> The evidence and all reasonable inferences from the evidence must be viewed in the light most favorable to the nonmoving party. <u>Id.</u> If a party fails to show an essential element of the case for which that party has the burden of proof, summary judgment is appropriate. <u>Id.</u>

In a well-reasoned opinion, the district court concluded that even if an oral agreement to sell equipment for use at Ft. Jackson existed between the plaintiffs and Northington, Northington lacked the authority to enter into the alleged contract on CSI's behalf. Furthermore, plaintiff had actual knowledge of Northington's lack of authority and thus could not have relied on Northington's representations. Without the right to rely, the district court held that the plaintiffs had no claim for breach of contract, fraud, negligent misrepresentation, and breach of contract accompanied by a fraudulent act. In addition, the district court found that plaintiffs had no claim for tortious interference with contract because CSI was justified in voiding any unauthorized actions of its agents.

With regard to the UTPA claim, the district court concluded that the plaintiffs failed to prove that CSI's allegedly unfair acts adversely impacted the public interest because the plaintiffs did not show that the acts were capable of repetition.

The district court held that the Sherman Antitrust claim failed because the interactions between CSI and Bironas did not give rise to a reasonable inference of conspiracy. The Court concluded that although Bironas complained to CSI about the plaintiffs' contracts at Ft. Jackson, a conspiracy will not be inferred when a manufacturer responds to a dealer's complaints. With regard to the civil conspiracy

6

claim, the district court concluded that the plaintiffs failed to allege additional facts in furtherance of the conspiracy but instead realleged those found in the UTPA claim and the Sherman Antitrust claim.

Finally, the district court dismissed the remaining causes of action involving the indemnity agreements for failure to state a claim upon which relief could be granted.

Having reviewed the record, briefs, and relevant statutes and case law, and having had the benefit of oral argument on the matter, we conclude that the district court's rulings were correct. Accordingly, we affirm on the reasoning of the district court opinion. See Hatfield, et al. v. Control Systems International, Civil Action No. 3:95-1577-23 (D.S.C. March 14, 1997).

AFFIRMED

7